THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DENISE CURRY, a/k/a Denise Jackson, Defendant-Appellant.

First District (1st Division)    No. 80-994

Opinion filed September 21, 1981.

Patrick A. Tuite, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mark E. Thompson, and Peter J. Vilkelis, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

After a bench trial, defendant Denise Curry was convicted of possession of 30 grams or more of a controlled substance, to wit: heroin (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(a)(1)) and sentenced to four years. The sole issue on appeal is whether the trial court erred in denying defendant's motion to quash her arrest and to suppress evidence seized from her purse after her arrest.

For the reasons stated herein we affirm.

The record reveals that on November 23, 1977, a warrant was issued to search for heroin and narcotic paraphernalia in room 308 of the 50th on the Lake Travel Lodge (hereinafter travel lodge) and on the person of a Denise Curry, also known as Debbie, described as a black female, 5′1″, 105 pounds, medium brown complexion between the ages of 25 and 30 years old. The complaint for the search warrant signed by Officer Bernard O'Reilly indicated that the request for the warrant was based on information supplied by a police informant who had provided O'Reilly with information 13 times during the past 2½ years, which resulted in seven pleas of guilty. Narcotics were recovered in each of the 13 instances. The informant stated that he purchased a brown substance that he later determined to be heroin for $20 at room 308 of the travel lodge on the evening of November 23, 1977, from a female that the informant knew as Denise Curry. He noted that two males and one other female also were present in room 308 at the time of his purchase.

The only State witness at the hearing to quash the arrest and suppress evidence was Officer Edward A. Wielosinski, who worked in his off duty hours as a security guard at the travel lodge. He testified that at 10:30 p.m. on November 26, 1977, he met Officer O'Reilly who came to the travel lodge to execute a search warrant which named room 308 and Denise Curry as the subjects of the search. Wielosinski accompanied O'Reilly and other police officers to room 308. Because no one was in the room at this time, Wielosinski used a pass key to gain entrance and remained in the room during the search. During the search which lasted about 30 minutes, the police discovered a .357 magnum revolver. While still in the room, O'Reilly called to determine whether the gun was registered or stolen. While it was not reported stolen, it also was not registered. After the search was completed, the officers removed the gun from the room. No

heroin, heroin paraphernalia, or other contraband was discovered. After leaving room 308, the police waited at the premises for Denise Curry until 2 a.m. at which time they left. At this time, Wielosinski was told to call the district station when Denise Curry returned. Wielosinski had the desk clerk plug the door lock of room 308 for nonpayment of rent so that the door could only be opened with a pass key.

Wielosinski further testified that at 3:45 a.m. a woman came to the desk and paid the rent for room 308. She was a pregnant black woman, between 5'7" and 5'9" and weighing in excess of 130 pounds. The desk clerk summoned Wielosinski and informed him that the rent on room 308 had been paid. The record is unclear as to whether the clerk informed him that Miss Curry or Denise Curry had paid the rent. Wielosinski accompanied the woman to room 308 to open the door. He then returned to the lobby and called the district station to report that the person named in a search warrant was now at the travel lodge. Shortly thereafter, the occupant of room 308 telephoned the desk clerk to report that a revolver had been taken from the room. Wielosinski spoke to the defendant and told her that he would come to her room. By this time, the police had arrived pursuant to his call and they accompanied him to defendant's room. Different officers responded to this call than those who earlier had executed the warrant. Defendant began to tell the officers about the gun but was interrupted by Wielosinski who informed her that he was a police officer and that the gun which she had called about was at the 21st Police District. Wielosinski then arrested her for failure to register a firearm within 10 days of its purchase (Chicago Municipal Code 1976, §11.1—7) and failure to have a City of Chicago firearms registration permit (Chicago Municipal Code 1976, §11.1—8). Upon being arrested, defendant lunged for her purse and, after a brief struggle, Wielosinski gained control of the purse. Upon searching the purse, he discovered a quantity of heroin in excess of 30 grams.

The record further reveals that defendant was charged with possession of a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(a)(1)) and failure to register a firearm with the City of Chicago (Chicago Municipal Code 1976, §11.1—7). Following the denial of her motion to quash the arrest and suppress the evidence, defendant pled guilty to possession of less than 30 grams of a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)), a lesser offense. However, upon retaining new counsel, she withdrew this plea and the charge for possession of greater than 30 grams of a controlled substance was reinstated. A bench trial was held at which time defendant stipulated to her possession of a substance analyzed as heroin. She was sentenced to a statutory minimum of four years. This appeal follows.

Defendant contends that the trial court erred in denying her motion

to quash her arrest and to suppress the evidence seized during the subsequent search. Defendant argues that the heroin seized from her purse during the search following her warrantless arrest for possession of an unregistered firearm should be suppressed because her arrest was without probable cause and was, therefore, unreasonable. See *People v. Roebuck* (1962), 25 Ill. 2d 108, 183 N.E.2d 166; *People v. Harshbarger* (1974), 24 Ill. App. 3d 335, 321 N.E.2d 138.

Defendant urges that her warrantless arrest for possession of an unregistered firearm was unlawful because Officer Wielosinski lacked "reasonable grounds to believe that [defendant] is committing or has committed an offense." (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c).) In order for a police officer to make a valid warrantless arrest, there must be, first, probable cause to believe that an offense was committed and, second, probable cause to believe that the person arrested committed the offense. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, 358; *People v. McKnight* (1977), 55 Ill. App. 3d 1052, 1055, 371 N.E.2d 946, 948.) Defendant contends that neither of these two elements was present.

Addressing the first of these two elements, defendant argues that if Officer Wielosinski had sought an arrest warrant for defendant based upon the information which he possessed at the time of her arrest concerning defendant, the premises and the firearm, a magistrate would not have found probable cause that an offense was committed. Defendant places her reliance on the fact that Officer Wielosinski did not have any information concerning when the firearm was purchased, who had a possessory interest in the weapon, who had acquired the weapon, and whether a registration application had been filed with the city. Absent this information, defendant urges that Officer Wielosinski had a mere suspicion that a violation of sections 11.1—7 and 11.1—8 of the Chicago Municipal Code had occurred.

The State contends that the test for probable cause does not require the arresting officer to have the detailed knowledge concerning the firearm as defendant urges. The State argues that a *prima facie* case that the ordinance has been violated is established by showing that the firearm was not registered. (*City of Chicago v. Dowdell* (1970), 126 Ill. App. 2d 58, 65, 261 N.E.2d 499, 502.) The State urges that the information possessed by Officer Wielosinski was sufficient to establish a *prima facie* case and, therefore, was sufficient to give him probable cause that a violation of the ordinance had been committed.

■■ We agree with the State. In *Dowdell*, this court examined the ordinance at issue in the present case and concluded that evidence which is sufficient to show that a firearm is not registered is sufficient to establish a *prima facie* case that the ordinance was violated. (126 Ill. App. 2d 58, 65,

261 N.E.2d 499, 502.) Based upon the testimony adduced at the hearing on defendant's motion to suppress, we believe that the evidence was sufficient to establish a *prima facie* case and, therefore, there was probable cause to believe that a violation of the ordinance had occurred. *Spinelli v. United States* (1969), 393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 590; *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d at 358; *People v. McKnight* (1977), 55 Ill. App. 3d 1052, 1055, 372 N.E.2d 946, 948.

Defendant next argues that there was no probable cause to believe that defendant committed the offense of possession of an unregistered firearm. Defendant contends that her arrest was unlawful because the height, weight and pregnancy of defendant did not comport with the description of the "Denise Curry" named in the search warrant. In support of her position, defendant relies upon *People v. Staes* (1968), 92 Ill. App. 2d 156, 235 N.E.2d 882, for the proposition that the description of the person to be searched pursuant to a search warrant must be sufficiently particular so that there is no doubt and no discretion left to the executing officer. Defendant further argues that particularized identification is necessary to avoid any unreasonable or unauthorized invasion of another's privacy and to insure that a warrant does not become an illegal general warrant. (92 Ill. App. 2d 156, 159-60, 235 N.E.2d 882, 884-85.) As additional support for her position, defendant cites *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 238, 100 S. Ct. 338; *People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564; *People v. Gabbard* (1979), 78 Ill. 2d 88, 398 N.E.2d 574; and *United States v. Jones* (5th Cir. 1980), 619 F.2d 494.

Defendant also claims that the State failed to establish her connection with the firearm removed from the room at the travel lodge. She asserts that she never acknowledged possession or ownership of the gun; that she was never seen in the room with the weapon; and that there was no evidence which established that the room was registered to her. Defendant claims that her reporting of the weapon's disappearance to the desk is no different than a house guest reporting the disappearance of an appliance to the owner. Defendant argues that the State has shown, at most, that she had mere knowledge of the gun's existence. Defendant urges that her mere presence in the travel lodge room was not sufficient to permit the court to infer that she owned or possessed a firearm. See *Ybarra v. Illinois*; *United States v. Romano* (1965), 382 U.S. 136, 15 L. Ed. 2d 210, 86 S. Ct. 279.

The State disputes the importance that defendant places upon the description of "Denise Curry" in the search warrant. Rather, the State contends that there were sufficient similarities in the description and location of defendant to sustain the trial court's finding that there was

probable cause to arrest defendant for possession of an unregistered firearm. The State urges that the action of Officer Wielosinski in arresting defendant must be examined in light of the existing facts and circumstances. The State argues that the trial court found that it was reasonable for Wielosinski to assume that defendant was the person named in the warrant and, therefore, probable cause existed to arrest her. The State contends that the finding of probable cause was not "manifestly erroneous" and should not be disturbed. *People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, 685, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.

■■ We agree with defendant that the description of the person to be searched must be described with sufficient particularity to avoid leaving the executing officer with any doubt or discretion. (*People v. Staes* (1968), 92 Ill. App. 2d 156, 235 N.E.2d 882.) However, we do not believe that the description of "Denise Curry" in the search warrant violated this principle. The warrant described "Denise Curry" with sufficient particularity to provide Officer Wielosinski with probable cause to arrest defendant for violation of the City of Chicago ordinance. Although there were some discrepancies between the height, weight and pregnancy of defendant and the "Denise Curry" named in the warrant, there were sufficient similarities, especially the name and address of "Denise Curry" and defendant, to sustain the finding of the trial judge that there was probable cause to arrest defendant based upon her description in the search warrant.

■■ Those cases which defendant cites in support of her contention are distinguishable from the present case. In *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338, and *People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564, defendant's conviction was overturned because the State made use of evidence obtained through unlawful means. In *Ybarra*, officers executing a search warrant in a tavern searched defendant who was a patron in the tavern. Ybarra was not the subject of the warrant and did nothing to provide the executing officers with any reason to believe that he had committed a crime. In the present case, defendant was the subject of the search warrant and her actions led Officer Wielosinski to believe that she had committed the offense of possession of an unregistered weapon. In *Creach*, the conviction of co-defendant Ruppert was reversed because of the State's use of evidence which was obtained after an unlawful arrest. Aside from Ruppert's association with Creach, the officers who arrested Ruppert without a warrant did not possess any information which would establish that Ruppert had committed any crime. In the present case, defendant occupied the room which was the subject of a search; she was named in the search warrant; and she

indicated to Officer Wielosinski that a gun was missing from her room. This information which Wielosinski possessed at the time he arrested defendant was sufficient to provide him with a reasonable basis to believe that defendant had committed the crime of possession of an unregistered firearm.

Defendant also relies upon *People v. Gabbard* (1979), 78 Ill. 2d 88, 402 N.E.2d 228, and *United States v. Jones* (5th Cir. 1980), 619 F.2d 494, to support her position. In *Gabbard,* defendant was walking along a highway when he was stopped by a State police officer for questioning as to defendant's reason for being on the road. Six days prior to the stop of defendant, the officer saw a police bulletin which described an escapee from a Federal prison; however, the officer did not base his stop of defendant upon this description. During his questioning of defendant, the officer discovered a drivers license which belonged to someone other than defendant. Defendant was subsequently arrested and taken into custody. The Illinois Supreme Court held that the stop and arrest were unlawful because the officer did not have probable cause to arrest defendant based upon the general description of the escapee and upon the evasive answers given the officer during questioning. The supreme court did not believe that the officer had reasonable grounds to believe that an offense was being committed or had been committed by defendant. Similarly, in *Jones,* a general description of a person wanted in connection with a gas station robbery was broadcast over the police radio. The officer heard only a portion of the description and saw defendant who, the officer believed, matched the description. The officer called to defendant to stop and defendant began to flee. The officer caught defendant after the chase and arrested defendant. Subsequently, it was learned that defendant was wanted in connection with a savings and loan robbery, the crime for which he was convicted. The Fifth Circuit reversed defendant's conviction and held that there was no probable cause to arrest defendant for the gas station robbery based upon the general description of the suspect. The foregoing cases are distinguishable from the instant case because the officers were seeking to question defendant for investigative purposes only. The officers did not have any articulable suspicions that the defendants were or had been engaged in criminal conduct. In the instant case, however, Officer Wielosinski had reasonable grounds to believe that defendant had committed the offense of possession of an unregistered firearm since defendant had the same name and address of the person named in the search warrant and an unregistered weapon had been found in defendant's room.

■■ Defendant's final contention is that the State failed to establish that she had any possessory interest in the weapon. We do not believe that it is necessary for the State to establish actual physical possession of the

weapon to sustain a conviction, rather proof of constructive possession of the gun by defendant is sufficient to uphold the trial court's decision. (See *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939; *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 414 N.E.2d 1072.) In *Nettles,* the supreme court stated that where narcotics are discovered on the premises over which defendant has control, it is permissible to infer that defendant had both possession and knowledge which is sufficient to sustain a conviction for unlawful possession of narcotics. (23 Ill. 2d 306, 308-09, 178 N.E.2d 361, 363.) Similarly, in the instant case, we believe that it is permissible for the trial court to infer that defendant possessed the weapon based upon her possession of the premises which were the subject of the search and her statement that a gun was missing from her room. The evidence presented at the hearing on the motion to suppress was sufficient for the trial judge to infer that defendant had knowledge of and possessed the weapon seized from her travel lodge room. See *People v. Williams* (1981), 98 Ill. App. 3d 844.

■■ We believe that the trial judge's finding that there was probable cause to arrest defendant was not "manifestly erroneous." (*People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, 685, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.) Since the arrest of defendant was lawful, Officer Wielosinski could lawfully search the purse of defendant after she lunged for the purse. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034; Ill. Rev. Stat. 1975, ch. 38, par. 108—1(a).) Accordingly, the decision of the trial court denying defendant's motion to quash her arrest and to suppress evidence was proper. Therefore, defendant's conviction is affirmed.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.